UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| EVELYN CUNNINGHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 4:08-cv-0123-SEB-WGH |
| vs. ) | |
| ) | |
| SEARS STORE #2160, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant, Sears, Roebuck and Co.'s ("Sears") Motion for Summary Judgment [Docket No. 34], filed on August 24, 2009. Plaintiff, Evelyn Cunningham, has brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, claiming that Sears discharged her because of her gender or race, and under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, claiming that Sears discharged her because she is over 40 years old. For the reasons detailed in this entry, Defendant's Motion for Summary Judgment is <u>GRANTED</u>.

*Factual Background*

I.   *The Parties*

Plaintiff, Evelyn Cunningham, is a resident of Louisville, Kentucky. She is an African American. Defendant, Sears, which is wholly owned by Sears Holdings Corporation, is a national retail chain licensed to do business in Indiana. The Sears store

in Clarksville, Indiana, is Store #2160. Aff. of Lewis ¶ 3.[1] Sears first employed Ms. Cunningham at Store #2160 in 1966. Dep. of Cunningham at 25. Ms. Cunningham voluntarily retired from the store in July 2006, but applied, and was rehired, for an open associate position at the store in February 2006. Id. at 31-33.

In Sears retail stores, Associates report to Department Managers, who in turn report to Store Coaches. Id. at ¶¶ 3, 5. Certain stores, including Store #2160, also employ a Loss Prevention Coach and a Human Resources Specialist. Id. At the time of Ms. Cunningham's termination, Scott Shelton was the Store Coach at Sears Store #2160. Dep. of Cunningham at 43. Greg Lewis was the Loss Prevention Coach, and Marie Beckwith was the Human Resources Specialist. Dep. of Cunningham at 45, 63; Aff. of Lewis ¶¶ 3, 5.

In September 2006, upon her rehiring, Ms. Cunningham completed computer-based training on Sears's Associate Discount Policy. Dep. of Cunningham at 50. Ms. Cunningham received additional training from Mr. Lewis in March 2007, in addition to reviewing Sears's Associate Discount and Price Match Plus policies, after which training she signed certifications acknowledging that she understood these policies.[2] Dep. of

---

[1]Plaintiff contends that we may not rely upon the Affidavit of Greg Lewis because "no such affidavit has been tendered." Pl.'s Response at 3. Contrary to this claim, the affidavit was, in fact, tendered in conjunction with Defendant's Motion for Summary Judgment, and has, since that time, been available on the Court's docket as document number 36. Plaintiff's contention is therefore without merit.

[2]Sears associates may purchase merchandise at a discounted price pursuant to the Associate Discount Policy. Dep. of Cunningham (Ex. 10 at 1). Separately, through the Price
(continued...)

Cunningham at 50-52, 57; Aff. of Lewis ¶¶ 8-10.

## II.   *Sears's Decision to Terminate Ms. Cunningham's Employment*

On October 3, 2007, Mr. Lewis ran a routine inquiry to determine if any associate had performed a transaction potentially in violation of Sears's discount policies. Aff. of Lewis ¶ 12. During this inquiry, Mr. Lewis discovered that, on September 27, 2007, Ms. Cunningham had performed a transaction in which she gave a customer both a price match and an associate discount, resulting in a $44.00 price match and a $12.60 associate discount to the customer. Id. at ¶ 13.

Mr. Lewis interviewed Ms. Cunningham about this incident on October 11, 2007. She admitted, and acknowledged in writing, that she understood Sears's Associate Discount and Price Match Plus policies, and that she had, in fact, given the customer the prohibited discount. Dep. of Cunningham at 65; Aff. of Lewis ¶¶ 14, 15. After this interview, Mr. Lewis told Mr. Shelton about the incident. Aff. of Lewis ¶ 17. While Mr. Lewis was present, Mr. Shelton contacted a Human Resources Consultant at Sears's Associate Service Center and received approval to terminate Ms. Cunningham's employment pursuant to her violation of the Associate Discount and Price Match Plus

---

[2](...continued)
Match Plus Policy, Sears offers to match another retail store's price on an item, as well as give the customer 10% of the difference in price. Id. (Ex. 13 at 2). Pursuant to both policies, associate discounts may not be combined with price match discounts. Id. (Ex. 10). Associates who violate these policies are subject to disciplinary action, including immediate employment termination.

policies. Dep. of Cunningham at 67; Aff. of Lewis ¶ 18. Ms. Cunningham was sixty-one years old at the time of her firing on October 11, 2007.

### III.     *Other Sears Store #2160 Associates*

On December 31, 2007, Mr. Lewis conducted another inquiry, this time reviewing the weekly price match summary report, again to ascertain whether any inappropriate discounts had been afforded by associates at the store. Aff. of Lewis ¶ 20. He discovered that Candace Offutt, a nineteen-year-old white female associate, had given such a discount.[3] After a decision making process similar to the one afforded Ms. Cunningham, in which Mr. Lewis contacted Mr. Shelton, who, in turn, contacted Human Resources, Mr. Shelton terminated Ms. Offutt's employment for violating Sears's Associate Discount and Price Match Plus policies. Id. at ¶ 28.

On August 24, 2007, Mr. Lewis interviewed James Lyons, a twenty-two-year-old white male working as an associate at the store, because he believed that Mr. Lyons, too, had violated the policy. Mr. Lyons admitted that he had received both an associate discount and a price match when he made a purchase for himself. Id. at ¶ 34. After a review by Mr. Shelton, Mr. Lyons was discharged that same day, for violating Sears's Associate Discount and Price Match Plus policies. Id. at ¶ 35.

Samuel Gilliam, a "young, white male," Pl.'s Response at 3, was also an associate

---

[3]The parties disagree as to whether Ms. Offutt received prior authorization to give the discount, which disagreement we take up in the discussion section below.

at Sears Store #2160. In her deposition, Ms. Cunningham stated that she heard from a former co-employee at the store that Mr. Gilliam offered a prohibited discount but was never discharged from his employment. Dep. of Cunningham at 74-77. According to Mr. Lewis, Mr. Gilliam had received prior approval to offer the combined discount and, for this reason, he was not fired. Aff. of Lewis ¶¶ 31-32.

Following her termination, Ms. Cunningham filed a claim with the U.S. Equal Employment Opportunity Commission. The Commission issued her a Notice of Right to Sue on May 12, 2008.

### *Legal Analysis*

*I.     Standard of Review*

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the

material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available. Seener v. Northcentral Technical Coll., 113 F.3d 750, 757 (7th Cir. 1997); Wohl v. Spectrum Mfg., Inc., 94 F.3d 353, 354 (7th Cir. 1996). To that end, we carefully review affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination. However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997).

## II. *Improperly Motivated Termination*

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1). A Title VII "plaintiff can

7

prove discrimination either by presenting evidence of discrimination (the 'direct method' of proof)," or by the burden-shifting analysis established in McDonnell Douglas v. Green, 411 U.S. 792 (1973) (the "indirect method" of proof). Darchak v. City of Chicago Bd. of Educ., 580 F.3d 622, 631 (7th Cir. 2009). In the case at bar, the parties do not engage in direct-method argumentation,[4] so we address Plaintiff's claim only under the indirect method of proof.

*A.     Indirect Method*

Under the McDonnell Douglas framework, a plaintiff must begin by establishing a *prima facie* case of discrimination. If one can be established, the burden shifts to the defendant to articulate a nondiscriminatory reason for the actions it took against the plaintiff. If the defendant can offer a legitimate, nondiscriminatory reason for the employment decision, the burden reverts to the plaintiff to show that there is a genuine dispute of material fact that the proffered reason for the employment action is pretextual. Nese v. Julian Nordic Constr. Co., 405 F.3d 638, 641 (7th Cir. 2005). The traditional *prima facie* case requires a showing by the plaintiff: (1) that she was part of a class of persons protected by Title VII; (2) that she was meeting her employer's legitimate job

---

[4]In fact, in her deposition testimony, Ms. Cunningham admitted repeatedly that there were no direct indications that she was discharged because of her race, gender, or age. E.g. Dep. of Cunningham at 52-54 ("Q; And did anybody ever tell you you were terminated because you were African American? A: No, sir."); Id. at 79-80 ("Q: Did anybody tell you you were terminated because you were female? A: nobody's never [*sic*] told me that, no."); Id. at 83 ("And nobody ever told you you were terminated because you were older than 40, did they? A: No, sir.").

expectations; (3) that she suffered an adverse employment action; and (4) that similarly-situated individuals outside her protected class were treated more favorably. See Elkhatib v. Dunkin Donuts, Inc., 493 F.3d 827, 830 (7th Cir. 2007). Because Sears does not challenge the first and third prongs of Ms. Cunningham's *prima facie* case under the McDonnell Douglas framework, to wit, that she was a member of a protected class (in fact, as many as three protected classes, because of her race, age, and gender) and that she was terminated, which constitutes an adverse employment action, only the following McDonnell Douglas analysis is at issue: the question of the adequacy of her work performance, the question of whether similarly situated employees were treated more favorably, and the question of pretext.

1.   Ms. Cunningham Did Not Meet Sears's Legitimate Expectations

In attempting to show that she met Sears's expectations, Ms. Cunningham relies on her performance record prior to the incident resulting in her discharge. She claims that this was an isolated violation of Sears's policies and that she was an otherwise model employee. While this may have been true, the second prong of Ms. Cunningham's *prima facie* case must be evaluated as of the date Sears terminated her employment. Burks v. Wisconsin Dept. of Transp., 464 F.3d 744, 753 (7th Cir. 2006). As of that date, Ms. Cunningham had admittedly violated a policy, which she knew could lead to her discharge. Dep. of Cunningham at 53-54 ("I forgot, I make a mistake, and I lost my job for it.").

Sears officially warned Ms. Cunningham, as it does all incoming employees, that a violation of the Associate Discount or Price Match Plus policy would result in discipline, including termination of employment. Dep. of Cunningham (Ex. 10, 13). Furthermore, the policies themselves described these violations and the attendant disciplinary ramifications, and Sears trained Ms. Cunningham on these and other policies at the time she was rehired in 2006. See Dep. of Cunningham at 50-51, 57-58 ; Aff. of Lewis ¶¶ 9-10. Because Ms. Cunningham admitted to committing a dischargeable offense by offering both discounts to a customer, she cannot show that she met Sears's legitimate job expectations. Dep. of Cunningham at 53, 54, 65-66, 71. Thus, she cannot establish the second prong of her *prima facie* case of discrimination against Sears.

2.     Ms. Cunningham Cannot Identify a Similarly Situated Employee Who Was Treated More Favorably

Even if Ms. Cunningham could show that she met Sears's legitimate job expectations, she would also have to show that a similarly situated individual outside her class was treated more favorably. "To be similarly situated, another employee must be directly comparable in all material respects." Hurst v. Ball Memorial Hosp., Inc., 2007 WL 1655794, at *5 (S.D. Ind. June 1, 2007). While "[a] similarly situated employee need not be 'identical,' . . . the plaintiff must show that the other employee dealt with the same supervisor, [was] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [his]

conduct or the employer's treatment of [him]." Caskey v. Colgate-Palmolive Co., 535 F.3d 585, 592 (7th Cir. 2008) (citations omitted).

Ms. Cunningham offers one employee she alleges to have been similarly situated to her: Samuel Gilliam, a white male who is under forty years old. Mr. Gilliam offered a combination discount on a television but was never disciplined. According to Ms. Cunningham, Mr. Gilliam's age, gender, and race, coupled with his conduct, satisfy the fourth prong of her *prima facie* case. However, upon closer review, it becomes clear that Mr. Gilliam was not, in fact, similarly situated to the Plaintiff.

Mr. Lewis, in his affidavit, acknowledged that "Mr. Gilliam provided a markdown on a customer's television purchase," but also "recall[ed] that Mr. Gilliam received Mr. Shelton's approval before performing this transaction." Aff. of Lewis ¶¶ 31, 32.[5] Ms. Cunningham never asserts that Mr. Gilliam did not, in fact, receive prior approval to conduct the transaction.[6] Because he received approval, Mr. Gilliam never actually

---

[5]Plaintiff contends that Mr. Lewis's assertions regarding Mr. Gilliam's transaction are inadmissible hearsay because Mr. Shelton, and not Mr. Lewis, approved of the discount offered by Mr. Gilliam. However, nothing in Mr. Lewis's affidavit states that he heard from Mr. Shelton about the transaction; rather, he states his own recollection of what happened. Because he is not offering any statement by Mr. Shelton into evidence, but rather his own memory of the discount, this is not hearsay and is not inadmissible. Fed. R. Evid. 801 ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

[6]In addition to being substantively unavailing, the evidence she offers is not detailed and is of dubious admissibility. Ms. Cunningham was not present, nor employed, at the Sears store at the time of this transaction. Dep. of Cunningham at 76. Her supporting evidence related to this transaction is drawn entirely from a co-worker named Jeannie Stafford, who, at "dinner one night" informed Ms. Cunningham of Mr. Gilliam's discount transaction and of the fact that his

(continued...)

violated Sears's discount policy, unlike Ms. Cunningham. Therefore, Mr. Gilliam and Ms. Cunningham did not engage in similar conduct - or at the very least his conduct contained "mitigating" differences - and Ms. Cunningham cannot show that the two of them were "directly comparable in all material respects." Hurst, 2007 WL 1655794, at *5. Thus, the record does not demonstrate that Mr. Gilliam was a similarly situated employee, and Ms. Cunningham cannot rely upon his conduct to establish the fourth prong of her case. Caskey, 535 F.3d at 592.

The only truly similarly situated employee described in the record is James Lyons, a twenty-two-year-old white male who admittedly violated Sears's Associate Discount and Price Match policies and was therefore fired. Aff. of Lewis ¶¶ 15, 18, 34, 35. Ms. Cunningham contends that he was not similarly situated because he conferred the benefit of the combined discount on himself, whereas she provided the discount to another person. This distinction is irrelevant; both associates violated Sears's policies, and they did so in identical fashion by combining the Associate Discount and Price Match Plus discounts without first obtaining approval. Thus, in addition to Ms. Cunningham's inability to point to a similarly situated individual who was treated more favorably, Sears's equal treatment of Mr. Lyons, a young, white male associate, further undercuts her *prima facie* case of discrimination.

---

[6](...continued)
employment had not been terminated. Id. at 76-77. This evidence is inadmissible hearsay. See Fed. R. Evid. 802; Minor v. Ivy Tech State College, 174 F.3d 855, 856 (7th Cir. 1999) (holding that plaintiff could not introduce evidence in summary judgment proceedings of what co-worker told her or evidence of rumors she heard because both were inadmissible hearsay).

Ms. Cunningham cannot point to an employee who was similarly situated to her and treated more favorably than she was.[7] Because she cannot establish two of the four elements of her *prima facie* discrimination case, Sears is entitled to summary judgment as a matter of law.

3. Pretext

Although typically a finding that the plaintiff cannot establish her *prima facie* case precludes the necessity of discussing pretext, "[w]here a plaintiff claims, as [Ms. Cunningham] does, that an employer's legitimate expectations were disparately applied the second and fourth elements of the *prima facie* case are closely intertwined with the pretext analysis, and the two inquiries may be merged and considered together." Faas v. Sears, Roebuck & Co., 532 F.3d 633, 642 (7th Cir. 2008). Accordingly, in response to suspicious circumstances alleged by Plaintiff, we address the issue of pretext in an excess of judicial caution.

As discussed above, Ms. Cunningham admitted that she was discharged because she violated Sears's Associate Discount and Price Match Plus policies, an admission corroborated by the documents attendant to her firing. See Dep. of Cunningham at 67;

---

[7]Ms. Offutt, to whom the parties dedicate extensive briefing, does not aid Plaintiff's establishment of the fourth prong for either of two reasons: (1) either she was, as Sears contends, similarly situated, in which case Sears is able to show another example in its pattern of nondiscriminatory discharge of those who violate the policies; or (2) as Ms. Cunningham contends, she received prior approval to conduct the otherwise prohibited transaction, in which case she, like Mr. Gilliam, was not similarly situated to the Plaintiff.

Aff. of Lewis (Exs. A-F). Thus, Sears offers a legitimate reason for her discharge. However, Ms. Cunningham attempts to demonstrate that this was merely a pretext for Sears's discriminatory decision to terminate her employment.

To prove pretext, Ms. Cunningham must establish that Sears's proffered reason for terminating her employment was a lie. Faas, 532 F.3d at 642; Atanus v. Perry, 520 F.3d 662, 674 (7th Cir. 2008) (quoting Bahl v. Royal Indem. Co., 115 F.3d 1283, 1291 (7th Cir. 1997)) ("The main inquiry in determining pretext is whether the employer 'honestly acted' on the stated reason."). Ms. Cunningham focuses on Candace Offutt, a nineteen-year-old white female, who also was fired after she violated Sears's Associate Discount and Price Match Plus policies. Aff. of Lewis ¶¶ 22, 24, 28. Ms. Cunningham contends that Ms. Offutt's firing was an intentional ploy on the part of Sears to create a defense to Ms. Cunningham's claims. In support of this theory, Ms. Cunningham highlights Ms. Offutt's assertion that she, like Mr. Gilliam, obtained prior approval to offer the combination discount. Aff. of Offutt ¶ 5 ("I obtained approval from my manager, Chris Florence, to give the associate discount and the price match."). According to Plaintiff and Ms. Offutt, Sears ignored this prior approval and fired Ms. Offutt, who is not a member of at least one of Plaintiff's protected classes, as a way of shielding itself from liability for Ms. Cunningham's discharge. Aff. of Offutt ¶ 8 ("Scott Shelton . . . told me that he didn't want to terminate me but that I was being terminated because Evelyn Cunningham had

been terminated for a similar transaction several months before.").[8] Plaintiff's pretext argument is unavailing.

At most, Ms. Offutt's assertions add up to an unfortunate circumstance for her, in which she was made a pawn in an ongoing lawsuit, wherein her termination was effected as a litigation stratagem. If this were true, it would be patently unfair and highly disconcerting. It would not, however, indicate that Sears possessed race- or age-based animus at the time it terminated Ms. Cunningham's employment. In fact, nothing in Ms. Offutt's affidavit or any part of the record attempts to describe any actionable bias on Sears's part in deciding to fire Ms. Cunningham. Despite Plaintiff's attenuated theory of malicious motives, without any indication of discriminatory intent or dishonest behavior on Defendant's part at the time of her discharge, we cannot conclude that the decision was pretextual.

Ms. Cunningham admittedly violated the Associate Discount and Price Match Plus policies, and further admitted that this was the reason for her discharge. At least one other similarly situated employee, who was not a member of any protected class, was treated exactly the same way as Ms. Cunningham for engaging in the exact same conduct.

---

[8]We note that these facts, although ultimately not material, are clearly disputed. At the time of her discharge, Ms. Offutt signed a written statement to Mr. Lewis attesting to the following: "I price matched home depot [and] accidentally allowed her to use her associate discount card. It was my mistake that I did not realize at the time . . . . I know that I am now suppose[d] to do that and I do apologize, because Greg covered it with us." Aff. of Lewis (Ex. K). Contrarily, Ms. Offutt presently asserts that she obtained approval to offer the discount, and that, thereafter, she was "forced . . . to write a statement admitting that [she] was wrong." Aff. of Offutt ¶ 6.

On these facts, despite Ms. Cunningham's attenuated claims of wrongful motivation, we conclude that Sears's decision to terminate her employment was not legally improper. Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008) (holding that a plaintiff's "hunch about the defendant's motives" is insufficient to survive summary judgment).

For all of the foregoing reasons, Sears is entitled to summary judgment as a matter of law.

### *III. Conclusion*

Having carefully considered the parties' arguments relating to Plaintiff's claims of race, gender, and age discrimination, we **GRANT** Defendant's Motion for Summary Judgment. Final judgment shall be entered accordingly.

IT IS SO ORDERED.

Date: 12/02/2009

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Samuel George Hayward
ADAMS HAYWARD & WELSH
samuelghayward@hotmail.com

Alan L. McLaughlin
LITTLER MENDELSON PC
amclaughlin@littler.com

Brian Lee Mosby
LITTLER MENDELSON, P.C.
bmosby@littler.com

16